IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **CHERYL PETREY,**<br><br>PLAINTIFF,<br><br>VS.<br><br>**FREEDOM MORTGAGE CORPORATION,**<br><br>DEFENDANT. | Case No.: 1:25-cv-00499<br><br>**JURY TRIAL REQUESTED** |

**COMPLAINT**

**COMES NOW** Cheryl Petrey, and, as her Complaint against Defendant Freedom Mortgage Corporation ("Freedom"), states as follows:

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 12 U.S.C. § 2614 and 12 U.S.C. § 1367.

Venue is proper here pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's cause of action occurred in this District.

**PRELIMINARY STATEMENT**

This action arises from Freedom's wrongful management of Plaintiff's home mortgage loan. Specifically, Freedom, the current servicer of the loan, failed to make timely payments out of escrow necessary to renew Plaintiff's homeowner's insurance policy. As a result, the prior homeowner's policy was cancelled and coverage lapsed. Freedom could have reinstated the policy but again failed to make the payment before the deadline for reinstatement. The resulting lapse

caused the cost of insurance to skyrocket, and this caused Plaintiff's monthly mortgage payments to substantially increase.

Freedom's failure to make the payment necessary to avoid lapse is a violation of the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et seq*. ("RESPA"), specifically Section 2605(g) which requires that premium payments be made out of escrow in a timely manner to avoid a lapse in coverage.

Freedom also violated RESPA by not properly investigating and responding to Plaintiff's notices of servicing error. Plaintiff provided multiple written notices of servicing error to Freedom pursuant to the procedures set out Section RESPA 2605(e) and its implementing regulations. Freedom failed to conduct any reasonable investigation and failed to make corrections as required by RESPA.

Plaintiff asserts a claim against Freedom for violations of RESPA and breach of mortgage. Plaintiff seeks statutory and actual damages, including damages for mental anguish and emotional distress, plus attorneys' fees and costs.

## PARTIES

1. The Plaintiff is a natural person and resident of Mobile County, Alabama.

2. Defendant Freedom Mortgage Corporation d/b/a Freedom Mortgage Services ("Freedom") is a corporation formed under the laws of the State of New Jersey, with its principal place of business in New Jersey. Freedom was and is the owner of the subject mortgage loan and the "lender" designated in subject mortgage and note. Freedom was and is also the servicer of the subject loan. Freedom is also a "mortgage servicer" as defined by 12 U.S.C. § 2605(i)(2). At all relevant times, it acted as servicer with respect to Plaintiff's mortgage loan.

**FACTUAL ALLEGATIONS**

1. Plaintiff is an adult resident of Mobile County, Alabama. She is a retired widow and lives at 138 Lasalle Street, Dauphin Island, Alabama 36528.

2. Mrs. Petry and her husband Joe B. Petrey purchased their home at 138 Lasalle Street on Dauphin Island on November 9, 2017. This was their primary residence. That purchase was financed with a mortgage from First Federal Bank. Mrs. Petrey died on July 4, 2021. Mrs. Petrey refinanced the existing mortgage on April 17, 2025, with a new loan with HomeBridge Financial Services, Inc., for $269,637. The required monthly principal and interest payments are $1,573.53.

3. The mortgage requires the borrower to maintain homeowners' insurance on the property and requires that the insurance premiums and property taxes be paid through an escrow maintained by the lender.

4. Servicing of the mortgage was transferred to Freedom effective March 1, 2025.

5. As servicer, Freedom performs all day-to-day activities regarding the mortgage on the lender's behalf. This includes, among other things, applying monthly payments in accordance with the terms of the mortgage, collecting escrow payments, maintaining the escrow account and making sure payments for taxes and insurance are timely made out of the escrow.

6. At the time Freedom obtained the servicing rights to Mrs. Petrey's mortgage, her home was fully insured through a homeowner's insurance policy from Frontline Insurance. The annual premium was $5,731. The policy renews each April and was scheduled to renew on April 15, 2025.

7. When Freedom obtained servicing rights to Mrs. Petrey's mortgage, it was responsible for obtaining all the information needed to timely make each required insurance premium. Freedom had access to that information either from the prior servicer or from the

insurance company.  Freedom also had access to all documents generated at the closing of the loan, which identified the amounts, if any, paid at closing for insurance premiums.  Freedom, therefore, knew or should have known that the homeowners policy was due to be renewed on April 15th and the amount of the required premium.

8. Freedom is required under the mortgage and federal law to make timely payments from the escrow account for payment of insurance premiums such that the payments are received when they become due. 12 U.S.C. § 2605(g).

9. Funds necessary to pay the annual premiums for the homeowner's policy were collected each month as part of Mrs. Petrey's regular monthly payment. Pursuant to the terms of the mortgage, those funds were held in an escrow account for the purposes of payment of insurance and taxes.

10. Freedom failed to timely submit the renewal premium for the Frontline homeowner's policy.  As a result, the policy was cancelled on April 15, 2025.

11. Prior to the renewal, Mrs. Petrey received notice that the premium had not been paid.  She contacted her insurance agency (Hill Robinson Insurance) and Freedom.  She was assured by Freedom, prior to the lapse, that it had everything it needed to pay the renewal.

12. Freedom had the opportunity to have the policy fully reinstated by making the premium payment by May 15, 2025, but it failed to do so.  This resulted in a permanent lapse of the Frontline policy.

13. After the final cancellation, Mrs. Petrey again contacted Freedom and, with the help of her son Brad, explained to Freedom what happened.  They were each told that Freedom would take no action to correct its error.

14. Freedom's failure to pay the renewal premium and its failure to timely reinstate the

policy led to a lapse in coverage which has, in turn, caused a drastic increase in the cost of coverage available to Mrs. Petrey. Plaintiff has been told that replacing the lapsed coverage would now cost over $11,000 because of the lapse.

15. Freedom also failed to timely pay the existing flood insurance policy, which was set to renew on August 14, 2025. However, after the policy was cancelled, Freedom paid the premium within the reinstatement period and the policy was reinstated.

16. On August 11, 2025, Mrs. Petrey sent a dispute letter to Freedom. The letter described Freedom's failure to make the Frontline renewal premium for the homeowner's policy and asked that the account be corrected. The letter also requested documents and information related to the servicing of the loan. A copy of that letter is attached as Exhibit A.

17. Freedom responded to the August 11th letter by letter dated September 25, 2025. In that letter, Freedom recounted the basic history of the insurance coverage and the premium due date, but it failed to explain why it did not pay the renewal premium or[1] why it failed to reinstate the policy after the initial lapse. However, Freedom's response failed to acknowledge its error. In fact, it failed to state, one way or the other, whether an error occurred.

18. Plaintiff's August 11, 2025 letter constitutes a Notice of Servicing Error ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35. The letter was mailed to the address designated by Freedom for receipt of RESPA notices of servicing error and requests for information.

19. Freedom has engaged in a pattern and practice of acts and omissions which violate RESPA sufficiently to allow recovery of statutory damages under Section 2605(f)(1)(B). This pattern and practice include the failure to timely make payments out of escrow for insurance and

---

[1]

a failure to conduct reasonable and adequate investigations of servicing errors described in NOEs. This pattern is reflected in multiple federal cases filed nationwide, as well as in multiple consumer complaints filed with the Consumer Finance Protection Bureau.

20. The harm suffered by the Plaintiff as a result of Defendant's wrongful acts and omissions bears a close relationship with the types of harm for which the law has traditionally allowed redress under common law claims for breach of mortgage, accounting, fraud, suppression, defamation, wrongful foreclosure, slander, invasion of privacy, wanton collections, negligence and willfulness.

## COUNT I
## (RESPA VIOLATIONS)

21. The allegations stated in Paragraphs 1 through 20 above are incorporated as if fully asserted herein.

22. This is a claim for Freedom's multiple violations of the Real Estate Settlement Procedures Act ("RESPA."), which imposes requirements and prohibitions upon mortgage servicers relating to the management of a home mortgage loan.

23. RESPA requires that a servicer make payments from any escrow established for payment of insurance premiums "in a timely manner as such payments become due." 12 U.S.C. § 2605(g).

24. RESPA and its implementing regulations grant borrowers the right to submit a "Notice of Servicing Error" ("NOE"), identifying perceived errors committed by the servicer and requesting information and documents relating to the servicing of their loan. 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

25. An NOE must sufficiently identify the borrower, the account and the perceived servicing error. Id.

26. RESPA requires specific actions be taken by the servicer upon receipt of an NOE, including a reasonable investigation of the error. The servicer is also required to make all "appropriate corrections" to the account which a reasonable investigation would reveal. This would include the correction of all servicing errors, even those not described in the NOE. RESPA also requires the servicer to suspend all derogatory credit reporting while it investigates the errors set out in the NOE.

27. A servicer which fails to conduct a reasonable investigation and fails to "make appropriate corrections in the account of the borrower" after receipt of an NOE violates RESPA Section 2605(e), without respect to any regulation promulgated under the statute. 12 U.S.C. § 2605(e)(2).

28. A servicer which fails "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties" violates Section 2605(k)(1)(C). This is a separate violation of RESPA, without respect to any regulation. 12 U.S.C. § 2605(k)(1)(C).

29. A servicer also violates RESPA when it fails to comply with regulations promulgated by the Bureau of Consumer Financial Protection, including the regulations concerning the servicer's duties upon receipt of an NOE. This is a separate RESPA violation. 12 U.S.C. § 2605(k)(1)(E).

30. Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

31. Freedom is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

32. At all relevant times prior to the Frontline homeowner's policy renewal date for the 2025 policy, Freedom had all the information needed to make the payment and was holding those funds in an escrow account established for the payment of insurance premiums.

33. Freedom failed to timely pay the additional premium required by Frontline and failed to timely reinstate the policy. These failures caused the policy to lapse. This is a violation of RESPA, 12 U.S.C. § 2605(g) and its implementing regulations.

34. Plaintiff's August 11, 2025 letter constitutes an NOE within the meaning of 12 U.S.C. § 2605(e) and its implementing regulations. Freedom was required to reasonably investigate the errors identified in the letter, make all appropriate corrections, and provide the information and documents requested.

35. Any reasonable investigation of the errors identified in Plaintiff's NOE would have revealed that errors were made and that corrections were required. Specifically, Freedom knew or should have known that it had failed to timely pay the homeowner's insurance premium and that this failure had caused the lapse and resultant increased costs. Moreover, it knew that the forced-placed insurance charges were solely caused by its own error and not by any failure on Mrs. Petrey's part. Freedom nevertheless failed to conduct any reasonable investigation, and it failed to correct the errors identified in that letter.

36. Freedom also failed to provide the documents and information requested in the NOE. This is also a violation of 12 U.S.C. § 2605(e) and its implementing regulations.

37. Freedom violated RESPA Section 2605(e) by failing to respond to Plaintiff's NOE as required by RESPA and its implementing regulations. Freedom also failed to conduct a reasonable investigation and failed to "make appropriate corrections in the account of the borrower" after receipt of Plaintiff's NOE. This is a violation of RESPA without respect to any

regulation promulgated under the statute. 12 U.S.C. § 2605(e)(2). It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

38. Freedom also violated RESPA Section 2605(k)(1)(C) by failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." This is a separate violation of RESPA, without respect to any regulation. 12 U.S.C. § 2605(k)(1)(C). It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

39. Freedom violated RESPA Section 2605(k)(1)(E) by failing to comply with regulations promulgated by the Bureau of Consumer Financial Protection, including the regulations concerning their duties upon receipt of an NOE as specified in those regulations. This is a separate RESPA violation and failing to comply with the regulations is a violation of the statute itself. 12 U.S.C. § 2605(k)(1)(E). It is also a violation of RESPA as implemented by regulations promulgated by the CFPB.

40. Plaintiff has suffered actual damages as a proximate result of Freedom's RESPA violations, including mental anguish and emotional distress.

41. Freedom has engaged in a pattern and practice of acts and omissions which violate Section 2605(e), including its repeated violations with respect to Plaintiff, sufficient to allow recovery of statutory damages under Section 2605(f). This pattern and practice also includes the failure to property respond to NOEs, failure to conduct reasonable and adequate investigations of servicing errors described in NOEs, and the failure to make corrections which any reasonable investigation would reveal are necessary and appropriate with respect to other borrowers.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Freedom for each violation of RESPA, awarding the following relief:

a. Statutory and actual damages as provided in 12 U.S.C. § 2605(f);

b. Reasonable attorney's fees, and costs expended in this proceeding; and

c. Such other and further relief as the Court may deems just and proper.

## COUNT II
### (BREACH OF THE MORTGAGE)

42. The allegations stated in Paragraphs 1 through 20 above are incorporated as if fully asserted herein.

43. This is a claim against Freedom as lender under the mortgage and note.

44. Freedom, as lender, owes and, at all relevant times, owed contractual duties to Plaintiff as specified in the mortgage. Those duties include the duty to collect and hold funds in escrow for purposes of the payment of premiums for the required insurance coverage and property taxes. Freedom is also required under the mortgage to timely make payments out of escrow to pay the insurance premiums when due.

45. The duties owed by Freedom as lender are non-delegable, and Freedom at all relevant times owed those duties directly to Plaintiff.

46. In addition to the legal duties expressly stated in the mortgage, Freedom owed Plaintiff at all relevant times an implied duty to act in good faith in the administration of those duties.

47. Freedom breached the mortgage when it failed to pay the homeowner's insurance premium and when it failed to take the necessary steps to reinstate the coverage after that failure.

48. The contractual duties owed by Freedom to Plaintiff under the mortgage, and as

implied by law, are so coupled with matters of mental concern and/or solicitude that the breach of those duties resulted in substantial mental stress and worry. Freedom's breach resulted in a significant increase in the cost of insurance and mortgage payments, and this caused substantial worry that, due to the increased costs, Plaintiff would ultimately lose his family's home. Freedom's wrongful acts and omissions necessarily, foreseeably, and reasonably resulted in extreme stress, worry, anxiety, mental anguish, and suffering on the part of the Plaintiff.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Freedom for breach of the mortgage, and award compensatory damages, including damages for mental anguish and emotional distress, plus interest and costs. Plaintiff further requests such other relief as the Court deems just and proper, the premises considered.

**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN.**

**RESPECTFULLY** submitted on this the 3rd day of December, 2025.

_____
KENNETH J. RIEMER (RIEMK8712)
RIEMER LAW, LLC
*Attorney for Plaintiff*
1610 Government Street
Mobile, AL  36604
Telephone: (251) 432-9212
E-mail: KJR@Riemer-Law.com


**DEFENDANT IS TO BE SERVED BY CERTIFIED MAIL AT THE FOLLOWING ADDRESSES:**

Freedom Mortgage Corporation
c/o C T Corporation System – Registered Agent
2 North Jackson Street, Suite 605
Montgomery, AL 36104