**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **CHERYL PETREY** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV. NO. 1:25-CV-00499-KD** |
| | ) | |
| **FREEDOM CORPORATION,** | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter is before the Court on Defendant Freedom Corporation's motion for summary judgment and exhibits (Doc. 28), Plaintiff Cheryl Petrey's response in opposition (Doc. 32), and Freedom's reply (Doc. 38). The motion has been fully briefed and is ripe for disposition.

## I. Background

On December 3, 2025, Petrey filed a Complaint (Doc. 1) asserting violations of the Real Estate Settlement Procedures Act and breach of contract against Freedom, arising from Freedom's alleged failure to properly service the real estate mortgage loan relating to Petrey's home in Mobile County, Alabama. (Doc. 1 at 6–11).

In January 2025, Petrey obtained a real estate mortgage loan from Homebridge Financial services, who assigned the servicing of the loan to ServiceMac, LLC. (Doc. 32 at 4); (Doc. 28-1 at 1–3). In early March, ServiceMac assigned servicing of the loan to Freedom. (Doc. 32 at 4). At the time Petrey obtained the loan, she maintained homeowners' insurance on the subject property through Frontline Insurance Company. (Doc. 32 at 4).

According to the Complaint (Doc. 1), the Frontline policy had a one-year term, renewable on April 15th of each year. (Doc. 1 at 3). Funds were collected as part of Petrey's monthly payment and held in escrow for the purposes of payment of the Frontline premiums. (Doc. 1 at 4). Petrey alleges that when Freedom obtained the servicing rights to Petrey's loan in early March, Freedom

had access to all documents gathered at the closing of the loan, including the amounts paid at closing for insurance premiums. (Doc. 1 at 3–4). Thus, Petrey alleges, Freedom "knew or should have known that the homeowner's policy was due to be renewed on April 15th and the amount of the required premium." (Doc. 1 at 4). Petrey alleges that Freedom "failed to timely submit the renewal premium for the Frontline homeowner's policy," and as a result, Frontline cancelled the policy on April 15, 2025. (Doc. 1 at 4).

In dispute here is the information that Freedom received when servicing was transferred from ServiceMac to Freedom. Freedom states that "the data they received from ServiceMac did not identify the Frontline Policy, including the identity of the insurance carrier, coverage amounts, renewal dates, or that renewal premiums were due for the same." (Doc. 28-1 at 4). Petrey received a Notice of Premium Due, a Renewal Reminder, and a Notice of Cancellation. (Doc. 28-4 at 12–15; Doc. 28-11 at 1; Doc. 28-14 at 5–7). Freedom alleges that did not receive copies of those documents and that Petrey never sent those documents to Freedom. (Doc. 28-1 at 3–5). Petrey asserts that Freedom knew:

> (1) money was set aside from the closing to pay the renewal premium; (2) that the insurance premium was held in the escrow account transferred to Freedom; (3) that there was a policy in place through Frontline; (3) [sic] that the renewal was due April 15th; (4) that as of the transfer date the premium the funds [sic] were still in the escrow account; and, therefore, (5) that the renewal premium had <u>not</u> been paid prior to the renewal.

(Doc. 32 at 6) (emphasis in original).

After Frontline cancelled the policy, there was an opportunity to have it reinstated by making timely payment before May 15, 2025. (Doc. 1 at 4). Freedom did not make that payment, and the Frontline policy lapsed permanently. (Doc. 1 at 4).

On August 11, 2025, Petrey sent a Notice of Error letter to Freedom. (Doc. 1 at 5). The notice described Freedom's failure to pay the premiums due on the Frontline Insurance policy and

requested additional information regarding the servicing of the loan. (Doc. 1 at 5). Freedom responded but ultimately failed to state whether an error occurred in servicing Petrey's loan. (Doc. 1 at 5); (Doc. 28-16 at 1–2).

As a result of these facts, Petrey is suing Freedom for violations of the Real Estate Settlement Procedures Act (RESPA), specifically 12 U.S.C. §§ 2605(g); 2605(e)(2); 2605(k)(1)(C); 2605(k)(1)(E). (Doc. 1 at 6–7). Petrey asserts that Freedom violated RESPA by failing to timely pay the premium required by Frontline, timely reinstate the insurance policy, properly respond to Petrey's notice of error, conduct a reasonable investigation, or make appropriate corrections in Petrey's account, and failing to timely respond to Petrey's requests to correct errors regarding the insurance payments. (Doc. 1 at 8–10). In addition to the RESPA claims, Petrey is suing Freedom for breach of contract, alleging that Freedom's failure to pay the insurance premiums and failure to reinstate the policy are breaches of the mortgage contract. (Doc. 1 at 10).

## II. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome" of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists. Id.

Defendant, as the party seeking summary judgment, bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark, 929 F.2d at 608 (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)); see also Fed. R. Civ. P. 56(c)(1)(A). If the nonmovant bears the burden of persuasion at trial, the movant may also make a prima facie showing of summary judgment by demonstrating that the nonmovant's evidence is insufficient to establish an essential element of its claim. Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1057 (11th Cir. 2020); Fed. R. Civ. P. 56(c)(1)(B).

If the movant meets its burden under Rule 56(c), summary judgment will be granted unless the nonmovant offers some competent evidence that could be presented at trial showing that there is a genuine dispute of material fact. Celotex, 477 U.S. at 324. If the movant met its burden by pointing "to specific portions of the record . . . to demonstrate that the nonmoving party cannot meet its burden of proof at trial," the nonmovant must "go beyond the pleadings" to designate specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." Anderson, 477 U.S. at 248. Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011). Thus, summary judgment is only proper when a movant shows that no reasonable jury could find for the nonmovant—even when the evidence and inferences are drawn in the nonmovant's favor.

## III. Law and Analysis

### A. RESPA

The RESPA claim encompasses two issues. First, whether Freedom violated RESPA by failing to timely pay the insurance premiums and timely reinstate the policy once it lapsed. Second, whether Freedom adequately and properly responded to Petrey's Notice of Error.

#### 1. Failure to timely pay / reinstate policy (RESPA § 2605(g))

The central dispute over § 2605(g) can be defined by one inquiry—what triggers a mortgage servicer's obligation to pay "taxes, insurance premiums, and other charges" from a borrower's escrow account. 12 U.S.C. § 2605(g). RESPA addresses the servicer's obligations as follows:

> Administration of escrow accounts
> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

12 U.S.C. § 2605(g).

Petrey alleges that "§2605(g) imposes a mandatory duty to make escrow payments when due," and that duty depends on nothing other than the payment deadline. (Doc. 32 at 11). Freedom argues that because Freedom never received notice that the premiums on the Frontline policy were due, "and instead, all of the information in Freedom's possession indicated that the policy premiums had already been paid at the time Freedom began servicing the loan," they could not have violated §2605(g). (Doc. 28-1 at 13).

The Fourth Circuit has established two factors that trigger a servicer's obligation to make payments under § 2605(g).[1] See Harrell v. Freedom Mortg. Corp., 976 F.3d 434, 440 (4th Cir. 2020). First, the loan must be a "federally related mortgage loan," and second, "the 'terms' of the loan 'require the borrower to make [] payments into an escrow account.'" Harrell, 976 F.3d at 440. When a borrower's loan agreement satisfies those two conditions, the servicer "shall make payments from the escrow account as they become due." Harrell, 976 F.3d at 440 (internal citations omitted). "The servicer must follow this statutory mandate . . . or . . . the borrower may seek actual damages, statutory damages, costs, and attorneys' fees. Harrell, 976 F.3d at 440.

The Middle and Northern Districts of Florida have also addressed claims under § 2605(g). Citing the Northern District of Illinois, those courts found that to state a claim under § 2605(g), a plaintiff must allege:

> (1) the borrower had a federally related mortgage loan; (2) the terms of the loan agreement require the borrower to make payments to an escrow account; (3) the borrower owed taxes or premiums that were to be paid out of the escrow accounts; (4) the servicer failed to make such payments in a timely manner, i.e. before the deadline to avoid a penalty and before the payment was 30 days overdue; and (5) at the time the premium payment was due, the borrower was not more than 30 days delinquent in making mortgage payments.

Herman v. Nationstar Mortg. LLC, 2024 WL 402863 at *3 (M.D. Fla. Feb. 2, 2024) (citing Hyderi v. Washington Mut. Bank, FA, 235 F.R.D. 390, 399 (N.D. Ill. 2006)); see also Quay v. Loancare LLC, 2021 WL 4992890 at *3 (N.D. Fla. Apr. 19, 2021) (quoting same).

Neither party has disputed that Petrey has a federally related mortgage loan, that the terms of her loan required her to make payments to an escrow account, that she owed premiums on the Frontline policy that were to be paid out of her escrow account, and that Freedom failed to make those payments in a timely manner. And neither has any party suggested that Petrey was more than 30 days delinquent in making mortgage payments.

[1] Other than an off-topic footnote mention, this Court cannot find any Eleventh Circuit precedent regarding RESPA § 2605(g).

Petrey correctly argues that the duty imposed on Freedom under RESPA § 2605(g) to timely pay the insurance premiums is not conditioned on receiving notice that the premiums are due. (Doc. 32 at 5–8). Looking to the text of the statute, as well as the Fourth Circuit's interpretation of § 2605(g), Freedom's duty to pay Petrey's insurance premiums was conditioned on whether (1) Petrey's mortgage loan was "federally related," and (2) that the terms of her loan required her to make payments into an escrow account. See Harrell, 976 F.3d at 440.

Freedom responds that such a result "imposes a broader, constructive-knowledge-based duty on a servicer beyond making payment by the applicable deadline," (Doc. 28-1 at 21), a result that Freedom argues has supposedly been foreclosed by the Southern District of Alabama in Marks v. Quicken Loans. 561 F. Supp. 2d 1259 (S.D. Ala. 2008). However, Freedom's citation to Marks is not persuasive. In Marks, the plaintiff asserted that §2605(g) "must include a duty by the transferring servicer to either pay the bill while it is payable or, if not, to see that information is provided to the new servicer and payee so that payment will be made before the deadline." Marks, 561 F. Supp. 2d at 1265 (emphasis added). The Court called this proposition "startling," and explained that plaintiffs were attempting to "have [the] Court cut from whole cloth a brand-new set of RESPA obligations on transferring loan servicers either to pay bills early or to provide certain information to the transferee loan servicer and payee at the time of transfer." Marks, 561 F. Supp. 2d at 1266 (emphasis added). Clearly, Marks addressed the obligations of the transferring servicer and held that the transferring loan servicer was not under any statutory obligation to provide the current servicer with specific documentation during the transfer. Marks does not support the premise that Freedom is relieved of its duty to timely pay insurance premiums if the transferring servicer fails to provide notice of premiums due.

Instead, Harrell, Marks, and the Florida district court cases support the conclusion that RESPA establishes a mandatory statutory duty to pay premiums on time that is not conditioned on whether the servicer received notice that the premium was due. The text of the statute makes no relevant exceptions. Freedom's argument basically urges the Court to create an exception when the servicer does not have actual knowledge of premiums due dates. That argument is not supported by the text of the statute or the case law interpreting it.

Additionally, Freedom argues that "when courts confront § 2605(g) claims at summary judgment rather than on the pleadings, the analysis turns on the evidence of what the servicer knew and whether the servicer's conduct actually caused an untimely payment." (Doc. 38 at 4) (citing Murphy v. Roundpoint Mortg. Servicing Corp., 778 F. Supp. 3d 895, 904–05 (W.D. Ky. 2025). Freedom's citation to Murphy is also unpersuasive. In Murphy, the court analyzed 12 C.F.R. § 1024.17(k)(5)(ii)(A), which addresses force-placed hazard insurance. That regulation "excuses servicers from paying insurance premiums if they have a 'reasonable basis' to believe either (1) the borrower's policy lapsed for reasons other than nonpayment, or (2) the property is vacant." Murphy, 778 F. Supp. 3d at 904. The Consumer Financial Protection Bureau interprets that regulation to cover cases where "a servicer does not receive a payment notice by the expiration date of the borrower's hazard insurance policy." Murphy, 778 F. Supp. 3d at 904 (citing 12 C.F.R. § Pt. 1024, Supp. I.). The court in Murphy found that the servicer did not receive a payment notice before the policy expired, which "alone gave [the servicer] a 'reasonable basis' to believe the policy has lapsed." Murphy, 778 F. Supp. 3d at 904. Because the servicer had a reasonable basis to believe the plaintiff lacked insurance, it was excused from paying the premium and was permitted to obtain force placed insurance for the plaintiff. Murphy, 778 F. Supp. 3d at 905.

The regulation discussed in Murphy related to a safe harbor provision for servicers, allowing them to obtain force placed insurance when they "reasonably believe" that the borrower's policy has lapsed. Murphy, 778 F. Supp. 3d at 904. The defendant in Murphy was able to show a "reasonable basis" for nonpayment by proving lack of notice. There is no "reasonable basis" language in the implementing regulations relevant to this case. The implementing regulation for § 2605(g) simply says "[i]f the terms of any federally related mortgage loan require the borrower to make payments to an escrow account, the servicer must pay the disbursements in a timely manner." 12 C.F.R. § 1024.17(K)(1). Consistent with Harrell and the Florida district court cases, Murphy does not provide support for creating a "reasonable mistake" exception under § 2605(g).

Freedom also argues, for the first time in the Reply Brief, that Petrey has not sufficiently alleged a "causal link between the alleged [RESPA] violation and the damages" she sustained. (Doc. 38 at 6) (citing Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016). Freedom argues that "the lapse of the Frontline policy resulted not from any act of Freedom but from the failure of every party with knowledge of the unpaid premium . . . to notify Freedom while something could still be done about it." (Doc. 38 at 6). Arguments raised for the first time in reply are not properly before the Court. Herring v. Sec'y, Dep't of Corrs., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'") (internal citation omitted); see also Fisher v. Ciba Specialty Chems. Corp., 238 F.R.D. 273, 316 n.89 (S.D. Ala. 2006) ("As a procedural matter, this argument is not properly raised because plaintiffs submitted it for the first time in their reply brief.").

However, even is considered, Freedom is not entitled to summary judgment on the RESPA claim. The statutory obligation under § 2605(g) is conditioned only on the mortgage loan being

federally related, and the collection of payments in escrow. See 12 U.S.C. § 2605(g). Neither of those are disputed. Petrey has shown that Freedom failed to pay her insurance premiums, and as a result, her policy lapsed and she was forced to obtain replacement homeowner's insurance. Thus, she has been cognizably harmed. See Renfroe, 822 F.3d at 1246–47 ("When a plaintiff plausibly alleges that a servicer violated its statutory obligations and as a result the plaintiff did not receive a refund of erroneous charges, she has been cognizably harmed."). In sum, the law makes no notice-based exceptions to a servicer's duty under §2605(g) to timely pay insurance premiums from an escrow account. Accordingly, summary judgment for Freedom on Petrey's RESPA § 2605(g) claim is **DENIED.**

**2. Response to the Notice of Error (RESPA §§ 2605(e)(2); 2605(k)(1)(C, E))**

RESPA Section 2605(e) imposes a duty upon servicers to respond to certain types of borrower inquiries, including a borrower's notice of a servicing error. A notice of error is "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error. . ." 12 U.S.C. § 2605(e)(1)(B).

Upon receipt of a notice of error, the servicer must "after conducting an investigation" "make appropriate corrections in the account" and "transmit to the borrower a written notification of such correction" or "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer." 12 U.S.C. § 2605(e)(2). RESPA's implementing regulations require a servicer to respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer

> in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i) ("Regulation X").

Freedom says it chose and complied with the second option. Thus, Freedom purports to have: (1) conducted a reasonable investigation; (2) concluded that there was no error based on that investigation; (3) given Petrey a written statement of "the reason or reasons for this determination"; and (4) facilitated Petrey's access to further information. See Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1244 (11th Cir. 2016).

As Freedom argues, a response is not improper just because a borrower is unsatisfied with the answer provided. See Finster v. U.S. Bank Nat'l Ass'n, 723 F. App'x 877, 881 (11th Cir. 2018); Whittaker v. Wells Fargo Bank, N.A., 2014 WL 5426497 at *8 (M.D. Fla. Oct. 23, 2014) ("The statute does not require the servicer to provide the resolution or explanation desired by the borrower; it requires the servicer to provide a statement of its reasons."); Blair v. PNC Bank, N.A., 2022 WL 2986868 at *6 (S.D. Ohio July 28, 2022) ("Dismissal is appropriate where a loan servicer has complied with the requirements of RESPA and Regulation X in responding to a NOE. That inquiry need not be more complicated than looking at the mortgage servicer's response and seeing if it fits the express terms of Regulation X in responding the errors alleged in Plaintiff's NOE."). These reflect the line drawing required in this case. The Court cannot hold that Freedom did not satisfy RESPA simply because Petrey did not like or understand the response to the NOE. Rather a RESPA violation occurs under § 2605(e) if Freedom failed to provide, after a reasonable investigation, reasons for its determination that no error occurred.

The regulation states that the servicer must "provid[e] the borrower with a written notification that includes a statement that the servicer has determined that no error occurred" and a statement of the reasons for that determination. 12 C.F.R. § 1024.35(e)(1)(i) (emphasis added).

There is an issue of fact as to whether Freedom's response complied with § 2605(e)(2)'s implementing regulations; whether it included a specific statement that no error occurred. The response explained that the policy reflected the balance due amount was $0.00 and confirms that the premium was not paid "due to closing date of the mortgage loan as escrow disbursements are not typically made within the first year after loan origination." (See Doc. 28-16 at 2). It also provides a surface-level recounting of the other information Petrey requested like confirming all phone calls are recorded and providing summary of internal servicing notes. (Doc. 28-16 at 1–2). But whether this is an admission of error is for a factfinder to decide.

But even assuming the Court infers that Freedom properly communicated its position that an error did not occur, Freedom's investigation must be reasonable. 12 C.F.R. § 1024.35(e)(1)(i). If a jury concludes Freedom erred in failing to pay the insurance premiums, a jury could also find the failure to discover that error in the investigation necessarily means that a reasonable investigation did not occur. See Diehl v. Money Source Inc., 2018 WL 2995721 (S.D. Ala. June 13, 2018) (finding even though servicer concluded no error occurred, because the plaintiff "presented evidence that any reasonable investigation would have revealed that an error occurred," summary judgment was not appropriate).

The Court finds there are issues of fact regarding whether Freedom complied with the RESPA requirement to communicate its findings to Petrey and whether Freedom's investigation into Petrey's Notice of Error was reasonable. Accordingly, summary judgment for Freedom on Petrey's claims under §§ 2605(e)(2), 2605(k)(1)(C), and 2605(k)(1)(E) is **DENIED.**

### B. The Mortgage

Along with the RESPA violations, Petrey contends that the same underlying facts led to a breach of the mortgage agreement. For a breach of contract claim to survive summary judgment

in Alabama, a plaintiff must produce evidence of (1) a valid contract binding the parties; (2) plaintiff's performance under the contract; (3) defendant's nonperformance; and (4) resulting damages. Beauchamp v. Coastal Boat Storage, LLC, 4 So. 3d 443, 450 (Ala. 2008). The plaintiff must "show either their fidelity to the terms of the contract during performance or that they have a legitimate excuse for their nonperformance." Forester v. Bank of America, N.A., 2012 WL 3206471, *6 (S.D. Ala., Aug. 7, 2012) (citing Walker v. Harris, 235 Ala. 384, 386 (1938)). "[A] party who commits a material breach cannot then use the contract to hold the other party liable for a later breach." Forester, 2012 WL 3206471 at *6 (citing Gray v. Reynolds, 553 So. 2d 79, 82 (Ala.1989) ("Courts should not enforce an agreement where the party seeking enforcement has failed to perform his part of the agreement.")).

To satisfy a plaintiff's duty to show their performance, "the plaintiff must prove that it substantially performed its obligations under the contract. See Mac Pon Co., Inc. v. Vinsant Painting & Decorating Co., 423 So. 2d 216, 218 (Ala. 1982). "Substantial performance of a contract does not contemplate exact performance of every detail but performance of all important parts." Id. "Whether a party has substantially performed a promise under a contract is a question of fact to be determined from the circumstances of each case." Cobbs v. Fred Burgos Constr. Co., 477 So. 2d 335, 338 (Ala. 1985).

In some cases, failure to provide notice is a breach of contract. See Jackson v. Wells Fargo Bank, N.A., 90 So. 3d 168, 173 (Ala. 2012) (citing 1 Jesse P. Evans III, Alabama Property Rights and Remedies § 34.5[a] (4th ed. 2010) ("A party may contractually undertake or obligate him or herself to provide pre-foreclosure notice. Nothing prevents a party from freely engaging in a contract that would require some form of notice to the mortgagor . . . as a condition precedent to the exercise of the power of sale in the mortgage. Failure to give notice where there is such a

contractual obligation amounts to a failure of a condition precedent or an estoppel, thereby forming a basis for barring exercise of the power."). In Jackson, the Court determined that the defendant's failure to provide notice that was required by the contract was a material breach of the contract, such that summary judgment was not proper on the plaintiff's claim. Jackson, 90 So. 3d at 173.

Both parties incorrectly agree Petrey's breach of contract claim rises and falls with the success of her claim under § 2605(g) because paragraph three of the mortgage agreement states "Lender will apply the Funds to pay the escrow items no later than the time specified under RESPA." (Doc. 28-8 at 6). But the same paragraph of the mortgage required Petrey to "furnish to Lender all notices or invoices of amounts to be paid." (Doc. 28-8 at 5).

There is no dispute that Petrey was required under the mortgage to furnish the notices to Freedom. There is also no dispute that Petrey received the Notice of Premium Due, Renewal Reminder, and Notice of Cancellation from Frontline, informing her that her payment had not been made. (Doc. 28-4 at 12–15; Doc. 28-11 at 1; Doc. 28-14 at 5–7). Freedom asserts, and Petrey does not dispute with any evidence, that Petrey never provided those notices to Freedom. Unlike RESPA, breach of contract case law requires performance by Petrey before a cause of action accrues.

Because Petrey never sent the notices she received to Freedom, she did not substantially perform under the mortgage. See Jackson, 90 So. 3d at 173. Petrey's failure to perform precludes her from enforcing the agreement against Freedom. See Gray, 553 So. 2d at 82. Accordingly, summary judgment for Freedom on Petrey's breach of contract claim is **GRANTED.**

## IV. Conclusion

For the reasons set forth herein, the Court concludes that a genuine issue of material fact exists regarding whether Freedom's response to Petrey's Notice of Error properly complied with

RESPA requirements and whether Freedom's investigation into Petrey's Notice of Error was reasonable. Accordingly, summary judgment on all Petrey's RESPA claims is **DENIED.**

The Court concludes that no genuine issue of material fact exists regarding whether Freedom breached the mortgage agreement. Accordingly, summary judgment on Petrey's breach of contract claim is **GRANTED.**

**DONE** and **ORDERED** this 17th day of November 2026.

/s/ Kristi K. DuBose
**KRSITI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**